# In the United States Court of Federal Claims

No. 11-340C
(Filed July 20, 2012)

```
* * * * * * * * * * * * * * * * * * *     *
                                          *
MELANIE C. TAYLOR,                        *   Military pay; disability determination;
                                          *   motion for judgment on the adminis-
                    Plaintiff,            *   trative record; review of military
                                          *   corrections board action; sufficiency of
             v.                           *   evidence; whether corrections board
                                          *   applied the Veterans Affairs Schedule for
THE UNITED STATES,                        *   Rating Disabilities.
                                          *
                    Defendant.            *
                                          *
* * * * * * * * * * * * * * * * * * *     *
```

    Jason E. Perry, Cheshire, CT, for plaintiff.

    Michael D. Austin, Washington, DC, with whom was Acting Assistant Attorney
General Stuart F. Delery, for defendant.  Capt. Lanourra L. Phillips, Air Force Civil
Litigation Division, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

    This case is before the court after argument on the parties' cross-motions for judgment
on the administrative record and supplemental briefing.  Plaintiff, having been permanently
retired for medical reasons with a 30% disability rating, contends that she deserves a 70%
disability rating, contrary to the decision of a board for correction of military records, which,
plaintiff argues, failed to apply properly the rating criteria of the Department of Veterans
Affairs.

### FACTS

#### I. Background

    The facts contained herein are drawn from the administrative record.  Melanie C.
Taylor ("plaintiff"), formerly served as an officer in the United States Air Force (the "Air

Force"). AR 8. Plaintiff enlisted in the Air Force as a Korean Linguist on September 27, 1995, and on September 25, 1998, she was commissioned as a Second Lieutenant. Id. at 11. Plaintiff served on active duty for approximately eight years before experiencing the emotional distress that served as the catalyst for the present suit. See id.

On July 26, 2006, following a self-reported suicide attempt, plaintiff underwent an Emergency Command Directed Evaluation. Id. at 45. During the evaluation, plaintiff was informed that she would be required to appear before a Medical Evaluation Board ("MEB"). 1/ Id. The MEB convened on September 19, 2006, to consider plaintiff's case; and plaintiff was examined by Maj. Nino A. Vidic, medical director for the psychiatry section of the 377th Medical Group, on September 25, 2006. Id. at 43, 51. Acting as the MEB, Maj. Vidic prepared the summary report of his findings and provided his—and thus the MEB's—recommendation. The MEB found that plaintiff was suffering from Major Depressive Disorder ("MDD"), Post-Traumatic Stress Disorder ("PTSD"), and Borderline Personality Disorder ("BPD"). See id. at 48-49. The combination of these disorders resulted in considerable to severe impairment for social and occupational adaptability. See id. Under each diagnosis Maj. Vidic recorded that there was "marked" impairment for further military duty, see id., and he concluded that "[t]he service member is currently unable to perform her duties due to her condition and hospitalization," id. at 50.

Although noting that plaintiff was seeking therapy and had been "treatment compliant, . . . attend[ing] all her appointments, and [was] benefit[ting] from such therapy," the MEB

---

1/ By way of general background, 10 U.S.C. §§ 1201-22 (2006), authorize the service Secretaries to retire or separate servicemembers found to be physically unfit to perform military duties. The court commends defendant on a clear, succinct exposition of these proceedings. See Def.'s Br. filed Dec. 2, 2011, at 3-6. Generally, as pertaining to the Air Force, if there is a question about a servicemember's fitness to continue in the service, the Air Force refers the servicemember to a Medical Evaluation Board, which then determines whether the Air Force should return the individual to duty or refer the individual to a Physical Evaluation Board (the "PEB") for evaluation of whether or not the individual may continue to serve. If referred to the PEB, the servicemember is processed first through an Informal PEB (the "IPEB"), which evaluates the case only on medical and personal documents. If the servicemember is dissatisfied with the IPEB determination, he or she may request a formal PEB hearing in which the individual may appear in person, be represented by counsel, and present evidence. If the individual still is not satisfied with the formal PEB's recommendation, he or she may submit a rebuttal to the Secretary of the Air Force Personnel Council for review and final decision, which can include deferral of a final determination, direction for an administrative discharge, returning the servicemember to duty, or retiring the servicemember with or without benefits. A final appeal may be made to the Air Force Board for the Correction of Military Records.

referred plaintiff to the Physical Evaluation Board (the "PEB") for a final determination and disposition. Id. On October 11, 2006, plaintiff responded to this referral with a twenty-page rebuttal of the MEB's summary. See Def.'s Br. filed Dec. 2, 2011, App. at 1-20. In her rebuttal plaintiff denied or minimized the incidents leading up to the MEB review and concluded that she believed the entire course of dealings that she had experienced "[were] all done as an act of reprisal by Maj[.] Vidic for the complaint [plaintiff] made about him to his Flight Commander . . . ." Id. at 20.

On October 23, 2006, the Informal PEB (the "IPEB") issued its report, largely agreeing with the MEB's findings. AR 42. The IPEB, organizing its findings into categories based on ratability and compensability, found that plaintiff suffered from MDD, associated with PTSD, and that this resulted in considerable social and industrial impairment. Id. These conditions were compensable and ratable. Id. Although the IPEB also found that plaintiff suffered from BPD, this condition was neither ratable nor compensable. Id. Based on these findings, the IPEB recommended placing plaintiff on the Temporary Disabled Retirement List (the "TDRL") with a 50% disability rating. Id. In the "Remarks" section of its findings—styled in the manner of addressing plaintiff directly—the IPEB stated:

> **Capt Taylor** - Your medical condition prevents you from reasonably performing the duties of your office, grade, rank, or rating. The [IPEB] finds you unfit and recommends temporary retirement with a disability rating of 50% IAW ["In Accordance With"] Department of Defense and Veterans Administration Schedule for Rating Disabilities guidelines. The purpose of Temporary Retirement is for you to undergo ongoing medical care to see if you will improve and be able to return to active duty; failure to secure and comply with medical treatment would be viewed unfavorably on future boards and major deductions will be entertained.

Id.

Dissatisfied with this recommendation, on October 30, 2006, plaintiff demanded a formal hearing. See Def.'s Br. filed Dec. 2, 2011, App. at 21. However, on December 6, 2006, plaintiff requested—and was granted—permission to waive her earlier election of a formal hearing "for the purpose[] of now concurring with the IPEB's recommendations and findings." Id. at 22. In requesting the waiver, plaintiff acknowledged that she would "have no further right to demand a formal hearing without substantial new evidence." Id. Subsequent to this waiver, on February 3, 2007, plaintiff was promoted to Major and placed on the TDRL with a disability rating of 50%. AR 12. Plaintiff then began therapy with a civil provider and made a total of fifty-seven visits to a therapist between April 6, 2007, and March 21, 2008. Id. at 114. During each visit the therapist consistently rated plaintiff

between a 60 and a 51 on the Global Assessment of Functioning ("GAF") scale, indicating a "Moderate" level of impairment.  See id. at 52-109, 114.

Plaintiff was reevaluated by a second IPEB on July 11, 2008.  Id. at 38.  On September 4, 2008, the second IPEB released its report of plaintiff's reevaluation.  Id. at 37. As part of that report, Maj. Kristina Money of the Air Force and Lt. Jonathan Kerr of the United States Navy—both members of the 79th Medical Wing—prepared a Psychiatric Addendum to the initial MEB report authored by Maj. Vidic.  Id. at 38-41.  Maj. Money and Lt. Kerr noted in their report that plaintiff had been receiving psychodynamic therapy, but had ceased therapy upon the death of her therapist in April 2008.  Id. at 38.  They also stated that plaintiff had complied with a new regimen of psychiatric medication and that plaintiff had pursued graduate coursework in psychology at Harvard University in pursuit of a Master's Degree.  Id. at 38-39.  However, they also noted that, during her interview, plaintiff displayed "anxiety with mild psychomotor agitation."  Id. at 39.

Regarding her current state, Maj. Money and Lt. Kerr found that plaintiff's MDD and PTSD were in partial remission, while her BPD was still an active illness.  Id. at 40-41.  It was their opinion that plaintiff was "medically unacceptable," according to Air Force regulations, and that, while plaintiff had "received the maximum benefit from current therapeutic modalities . . . . [h]er condition may be expected to worsen in the military environment.  Her prognosis is guarded."  Id. at 41.  The second IPEB appears to have accepted these findings because the IPEB also found plaintiff's MDD in partial remission and her PTSD resolving.  Id. at 37.  Although it found overall that plaintiff's "medical condition has improved since being placed on the TDRL and appears to have stabilized," the second IPEB found plaintiff unfit for duty and recommended discharge with severance pay with a disability rating of 10%.  Id.

Plaintiff once again disagreed with the results of the IPEB, and she appealed the result to a formal PEB, which convened on January 29, 2009.  Id. at 34.  Before the formal PEB, plaintiff acknowledged that she was unfit for duty.  Id. at 35.  However, contrary to the second IPEB's recommendation, plaintiff argued that she "should be permanently medically retired . . . [with a] 70% IAW VASRD [("In Accordance With Department of Veterans Affairs Schedule for Rating Disabilities")] Code 943 (for Major Depressive Disorder)."  Id.  On January 29, 2009, the formal PEB issued its findings and recommended disposition.  The formal PEB found that plaintiff had not been able to complete the classes required to actually enter the graduate program at Harvard, and that she had not been able to secure employment. Id. Considering the evidence before it, along with plaintiff's previous medical evaluations and the Psychiatric Addendum, the formal PEB found that "[plaintiff's] condition has stabilized, remains unfitting for military service and recommends Permanent Retirement with a compensable disability rating of 30% per the [VASRD]."  Id.  On the same day that the formal PEB released its recommendation, plaintiff, after consulting with counsel, signified her

disagreement with the formal PEB's findings and requested referral of her case to the Secretary of the Air Force Personnel Council ("SAFPC") for review and final decision. Id. at 36.  In doing so, plaintiff acknowledged that she had until February 8, 2009, to submit a rebuttal or any additional evidence.  Id.

On March 20, 2009, the SAFPC issued its decision, and, consistent with the recommendation of the second IPEB, directed that plaintiff be removed from the TDRL and discharged with severance pay and a disability rating of 10%.  Id. at 27.  In coming to this conclusion, the SAFPC reviewed the testimony presented to the formal PEB, the remarks by the formal PEB and the IPEB, the narrative summary of the MEB, and plaintiff's service record.  Id.  The SAFPC mentioned plaintiff's testimony before the formal PEB regarding her denial of any improvement and on her self-reported symptoms.  Id. at 28.  The SAFPC also cited evidence submitted by plaintiff that she had struck an assistant district attorney and that there were multiple financial claims against her; however, the SAFPC noted that plaintiff stated that she "cannot provide witness statements to support [her] contention because there is no other person who can sufficiently describe the extent of [her] impairments. . . . [And that] it's inappropriate for others to provide statements concerning [her] protected health information."  Id.  Ultimately, the SAFPC found that "the member's self-report of her condition is not compelling when compared to the assessment provided by mental health professionals."  Id.

Turning next to plaintiff's request for a disability rating of 70%, the SAFPC noted that "personality disorders are not eligible for disability compensation," id.—a key observation given the SAFPC's determination that "[m]any of the characteristics that the member cites as evidence of her impairment, particularly her misconduct and irresponsible actions, are features of BPD, not MDD/PTSD," id. at 29.  Citing to a Department of Defense regulation providing that "[e]very effort must be made to distinguish symptoms and impairment resulting from personality disorder or mal-adaptive traits from impairments based on other psychiatric conditions," id. at 28, the SAFPC concluded that, based on the findings in the Psychiatric Addendum, "the proportion of the member's impairment that should be attributed to MDD/PTSD is slight compared to BPD.  Therefore, the [SAFPC] finds the member's disability rating is no higher than 10 percent," id. at 29, and that plaintiff should be discharged with severance pay.  The SAFPC, however, did advise plaintiff of the option to further appeal the final decision to the Air Force Board for the Correction of Military Records ("AFBCMR" or "the Board").  Id.  Plaintiff was separated from the Air Force on April 12, 2009.  Id. at 11.

Plaintiff, through counsel, submitted an application for relief to the AFBCMR on October 30, 2009.  Id. at 9.  Her application set forth a series of arguments attacking not only the decision of the SAFPC, but also the procedures used beginning with the MEB.  See id. at 12-23.  Plaintiff argued, inter alia, that: (1) based on the DSM-IV definition of BPD, she was misdiagnosed and, in fact, suffers only from MDD and PTSD, id. at 12-13; (2) even if the

5

BPD diagnosis was accurate, the SAFPC's decision was arbitrary, capricious, not substantially justified and contrary to law because of misplaced reliance on available evidence, insufficient justifications, and a failure to follow the applicable procedures provided by law and regulation, id. at 13-20; (3) plaintiff was denied counsel for the SAFPC review, id. at 20-21; (4) plaintiff's concerns regarding the decisions of the formal PEB and SAFPC were never addressed, nor was she given the opportunity to respond to the findings of the SAFPC, id. at 21; (5) the MEB evaluation—particularly that contained in the Psychiatric Addendum—was inadequate and incomplete, id. at 21-22; and (6) plaintiff was not provided with counsel after the re-evaluation following her placement on the TDRL, nor was she advised of her right to seek the opinion of an Independent Medical Adviser, id. at 23. Given these asserted errors, plaintiff requested that "her records be corrected to reflect that she was not separated on 12 April 2009. . . . [and that] the AFBCMR . . . change her records to show that she was permanently retired with a disability rating of 70%." Id. at 11.

In connection with the AFBCMR's consideration of plaintiff's application, a medical consultant to the Board—Dr. Horace R. Carson, M.D., Senior Medical Advisor—reviewed plaintiff's case, and on April 8, 2010, issued an advisory memorandum containing his findings. Id. at 111-14. Dr. Carson first presented a detailed recitation of the facts and plaintiff's medical history beginning around December 2005 and continuing through the SAFPC's decision. See id. at 111-12. The court's review confirms that the medical consultant considered all of the documentation and evidence presented by plaintiff, including the twenty-page memorandum plaintiff submitted in response to the initial narrative summary prepared for the MEB. See id. Having reviewed plaintiff's case, it was Dr. Carson's opinion that the SAFPC had erred, and he recommended that plaintiff be granted partial relief in the form of a restoration of her medical retirement with a 30% disability rating. Id. at 114.

First, the medical consultant gave a detailed discussion on the topic of plaintiff's possible diagnosis of BPD. Id. at 113. The medical consultant noted that the civilian therapist that treated plaintiff once she was placed on the TDRL never made a personality disorder diagnosis, nor provided plaintiff any treatment for a personality disorder. Id. Moreover, the medical consultant agreed with plaintiff that, were she truly suffering from BPD, it most likely would have "manifested much earlier in her career; thus raising some question as to the accuracy of this particular diagnostic entity." Id. The accuracy of the BPD diagnosis also was questionable "particularly in view of the overlapping and shared clinical manifestations of certain Axis I disorders, such as Bipolar Disorder (not diagnosed in [plaintiff]'s case), Depression, and perhaps an Acute Anxiety Reaction." Id. The specific facts of this case further led to "the possible false belief that it was the applicant's personality style and not her PTSD and associated Depression, which contributed greatest to her level of impairment." Id. After discussing the current state of the law regarding disability determinations—i.e., the passage of the National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-

181, § 1642, 122 Stat. 3, 465 (codified at 10 U.S.C. § 1216a) (the "2008 NDAA")—the medical consultant concluded that he

> does not doubt the sincerely [*sic*] or intent of the SAFPC in making the decision to reduce the [plaintiff]'s disability rating; believing this was based upon sound medical principles. However, the [plaintiff]'s counsel has raised reasonable doubt that the [plaintiff]'s underlying personality style was not the preponderant cause of her mental dysfunction. For this reason, the Consultant opines, a[t] a minimum, the [plaintiff]'s retirement with a 30% disability rating should be restored.

AR 113.

The medical consultant next turned to plaintiff's request for a 70% disability rating. After setting forth the basic framework of the differing disability percentage labels, id., he then explained how the disability rating determination system used by the military differs from the one used by the Department of Veterans Affairs (the "DVA") rendering the two systems "complementary." Id. According to the medical consultant, the military makes disability determinations based upon the "'snap shot in time' severity level present at that time of final disposition" whereas the DVA makes its disability determinations "for any service incurred medical condition, without regard to its proven impact upon a service member's retainability or ability to perform military duty." Id. This mandate enables the DVA to re-evaluate a candidate periodically and make subsequent adjustments to the disability rating award to reflect the current level of impairment. Id. Thus, the medical consultant stated that, while he placed "probative value in the rating determination by the DVA, the evidence is insufficient to make a like rating determination based upon the evidence presented to previous [PEBs] and the SAFPC." Id. at 114.

With regard to plaintiff's request for a 70% rating "as shown in an extract from the Veterans Administration Schedule for Rating Disabilities," id. at 113, the medical consultant found that "the [plaintiff] has not met the burden of proof that adequately justifies the maximal (permanent retirement with a 70% disability rating) requested change in the record she desires," id. at 114. In so concluding, the medical consultant remarked that even plaintiff's civilian therapist consistently ranked plaintiff—via a checkmark on the session evaluation forms—as suffering from a "Moderate" level of impairment on the GAF scale, never higher. Id. Nonetheless, the medical consultant explained that plaintiff

> may submit additional evidence not previously made available, e.g., actual DVA rating determinations and applicable rationale, conducted within a reasonable period following her retirement date, or clinical assessments conducted near or at the time of removal from the TDRL that reflect her

condition was characterized as more severe, for a reconsideration of the rating determination.

Id.

On April 16, 2010, a copy of the medical consultant's evaluation was sent to plaintiff's counsel for review, and plaintiff was given the opportunity to provide comments. Id. at 6, 117. Plaintiff neither submitted a response to the medical consultant's evaluation nor any new evidence to support her claim for a more severe disability rating. Id. at 6. On October 27, 2010, the AFBCMR issued its decision. See id. at 1-7. The AFBCMR concluded that "[s]ufficient relevant evidence has been presented to demonstrate the existence of error or injustice to warrant changing the applicant's discharge with severance pay to a disability retirement." Id. at 6. In so finding, the board concurred with the recommendation of the medical consultant and "adopt[ed] his rationale as the basis for [its] decision the applicant has been the victim of an error and injustice . . . ." Id. The Board ordered the correction of plaintiff's records to show that on April 12, 2009, she was permanently retired for medical reasons with a 30% disability due to MDD associated with PTSD, VASRD Code 9434. Id. at 2.

## II. Procedural history

On May 25, 2011, plaintiff filed a complaint in the United States Court of Federal Claims seeking to overturn the Board's decision. Defendant moved on December 2, 2011 for judgment upon the administrative record. Plaintiff opposed and filed her cross-motion for judgment on the administrative record on January 3, 2012. Briefing was completed on February 7, 2012. Subsequent to oral argument, the court requested supplemental briefing on several issues relating to the applicability of the 2008 NDAA because the parties had not discussed the case law on point issued to date. See Order entered Feb. 29, 2012. The parties completed supplemental briefing on May 9, 2012.

## DISCUSSION

## I. Standard of review

### 1. Judgment on the administrative record

The parties filed cross-motions for judgment on the administrative record pursuant to RCFC 52.1(c), which provides a procedure by which parties may seek an expedited trial on a "paper record, allowing fact-finding by the trial court." Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005). The parties are limited to the agency record and individual

statements of fact submitted under RCFC 52.1.  The court must make its findings of fact from this record as if it were conducting a trial.  Id. at 1357.

### 2.  Decisions of boards for correction of military records

Neither party initially directed the court to any case law that illuminated the question of whether the 2008 NDAA would have any effect on judicial review, including the decisional law regarding plaintiff's burden of proof and the presumption of regularity attaching to a correction board's decision.  It is clear that the 2008 NDAA did make several changes to the review process that the military branches must follow.  Subsequent to the passage of 2008 NDAA, 10 U.S.C. § 1216a required the services to uniformly apply the VASRD disability ratings in lieu of service-specific ratings.  10 U.S.C. § 1216a(a).  In addition, 10 U.S.C. § 1216a(b) required that the services "take into account all medical conditions, whether individually or collectively, that render the member unfit" rather than simply those that were ratable.  Id. § 1216a(b).  Further, 38 C.F.R. § 4.2 (2012), provides that "[i]t is the responsibility of the rating specialist to interpret reports of examination in light of the whole recorded history."  38 C.F.R. § 4.2; see also 38 C.F.R. § 4.7 (2012) (requiring assignment of higher of two evaluations if disability picture "more nearly approximates the criteria required for that rating").  The Air Force was bound to apply the standard of 38 C.F.R. § 4.3, that, "[w]hen after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant."  38 C.F.R. § 4.3.  See generally Sabo v. United States, 102 Fed. Cl. 619, 622-23 (2011).

Regarding whether other changes affected the standard of judicial review or altered the application of the presumption of regularity, the court ordered the parties to submit supplemental briefing.  See Order entered Feb. 29, 2012.  Both parties agreed that nothing in the 2008 NDAA altered the standards governing judicial review of decisions of military corrections boards.  See Def.'s Br. filed Apr. 24, 2012, at 11-13 ("The procedures announced through the 2008 NDAA provide this Court with only a mechanism to gauge whether the decision of the AFBCMR was arbitrary [or] capricious . . . . [t]hose procedures do not, in and of themselves, alter, explicitly or implicitly, the long standing standard of review."); Pl.'s Br. filed May 9, 2012, at 3 ("There appears to be nothing in [the] text of the 2008 NDAA that would explicitly alter the standards that apply to a court's review of a military correction board.").  Defendant further argued that the 2008 NDAA also "did not affect the law governing a military correction board's review of a service member's case."  Def.'s Br. filed Apr. 24, 2012, at 11-12.  Moreover, both parties appear to concur that the presumption of regularity, as articulated in Melendez Camilo v. United States, 642 F.3d 1040, 1045 (Fed. Cir. 2011), applies to the decisions rendered by corrections boards involving application of the VASRD as required by the NDAA.  See Def.'s Br. filed Apr. 24, 2012, at 25-27; Pl.'s Br. filed May 9, 2012, at 7-8.

The court now considers plaintiff's arguments of error under the applicable standard of review. The court reviews decisions of a corrections board under a deferential standard so as not to "disturb the decision of the [corrections board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Barnick v. United States, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (citing Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005)). Plaintiff also must overcome the presumption of regularity that attaches to the actions of a corrections board. See Melendez Camilo, 642 F.3d at 1045 (endorsing presumption that fact finder reviews all evidence unless he expressly states otherwise); Richey v. United States, 322 F.3d 1317, 1326 (Fed. Cir. 2003) (noting "the presumption of regularity that attaches to all administrative decisions" in the context of military board action).

In cases involving military personnel decisions, the service branch is entitled to deference. Friedman v. United States, 310 F.2d 381, 386-87 (Ct. Cl. 1962) ("Congress has entrusted the administrators with a large measure of discretion and has in effect established an executive agency as the primary tribunal for determining whether certain adverse action should be taken against the employee."). Particularly in cases such as this one, "[j]udicial deference to administrative decisions of fitness for duty of service members is and of right should be the norm." Maier v. Orr, 754 F.2d 973, 984 (Fed. Cir. 1985). The reviewing court does not reweigh the evidence before the correction board but determines "whether *the conclusion being reviewed* is supported by substantial evidence." Heisig v. United States, 719 F.2d 1153, 1157 (Fed. Cir. 1993). Because the Court of Federal Claims does not sit as a "super correction board," Skinner v. United States, 594 F.2d 824, 830 (Ct. Cl. 1979), this court will not substitute its judgment for that of the board's when reasonable minds might differ on the conclusions to be drawn from the evidence, Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986), or reweigh the medical evidence that has been presented, de Cicco v. United States, 677 F.2d 66, 70 (Ct. Cl. 1982). Nor will it consider issues that were not raised in the proceedings before the board. See Metz v. United States, 466 F.3d 991, 999 (Fed. Cir. 2006); see also Lizut v. Dep't of the Army, 717 F.2d 1391, 1396 (Fed. Cir. 1983) ("Allowing a party to withhold important issues from the board and later present them to this court would undermine the board's authority.").

II.  Whether the AFBCMR applied the proper VASRD standards in evaluating plaintiff's claim and whether its decision is supported by substantial evidence

Plaintiff's primary contention is that the Air Force "failed to apply, discuss, or consider the relevant standards for determining disability ratings." 2/ Pl.'s Br. filed Jan. 3, 2012, at 1.

_____

2/  Plaintiff vigorously has maintained that the Air Force committed errors at all of the various levels of review. This court reviews only the decision by the AFBCMR. The Board found that plaintiff had sufficiently demonstrated the existence of error or injustice to overturn the SAFPC decision, the result of which essentially was to reinstate the formal PEB

Essentially, plaintiff contends that, despite being required to do so by 10 U.S.C. § 1216a, the Air Force did not evaluate plaintiff's medical condition using the VASRD standards.  Plaintiff contends that this is evidenced by the fact that the medical consultant, upon whom the Board clearly relied, did not discuss the VASRD scale but "instead discussed the prohibited, irrelevant, and withdrawn criteria found in DoD Instruction ("DoDI") 1332.39."  Id. at 3.  Plaintiff then cites to that part of the medical consultant's opinion discussing the servicemember's "social and industrial adaptability (S&I)," as well as his mentioning the civilian provider's rankings of plaintiff's "global GAF"—both of which, plaintiff notes, no longer are criteria that should be considered.  Id. at 3-4 (citations omitted) (internal quotation marks omitted).  Plaintiff argues that this failure to set forth the appropriate standards for a 30% and 70% rating resulted in inappropriate balancing of the evidence and an erroneous determination.  Had the AFBCMR considered only the relevant, applicable criteria, the evidence fully supports a conclusion that plaintiff was deserving of a 70% disability rating and that the Board's failure to reach this conclusion was arbitrary, capricious, or not supported by substantial evidence.  See id. at 10.

The court begins by noting that the AFBCMR did not merely adopt the medical consultant's findings, conclusions, and recommendations, nor those of the formal PEB.  Rather, the Board issued a five-page decision, AR 3-7, that referred to and appended the medical consultant's evaluation, which itself referenced the findings of the formal PEB.  Indeed, the Board specifically stated that it "carefully reviewed [plaintiff's] application," id. at 6, indicating that it independently reached its decision to concur with the medical consultant.  The AFBCMR permissibly adopted the medical consultant's rationale for assigning plaintiff a 30% disability rating in lieu of restating all the information that the medical consultant had already diligently discussed.  Id.  However, because the Board itself stated that it was adopting the rationale of the medical consultant "as the basis for our decision," id., the court examines the medical consultant's report in light of plaintiff's several challenges.

The court rejects plaintiff's contention that the medical consultant employed a rescinded DoDI and failed to apply the proper VASRD standards.  It is true that the AFBCMR's decision, the medical consultant's evaluation, and the formal PEB decision do not recite the criteria for 30% and 70% disability under the VASRD.  However, the supplemental briefing does not substantiate any requirement to list the criteria.  The court

---

2/ (Cont'd from page 10.)

decision.  Both plaintiff and defendant appear to agree that this court should evaluate both the AFBCMR decision and the underlying PEB decision for error.  See Def.'s Br. filed Dec. 2, 2011, at 22-23; Pl.'s Br. filed Jan. 3, 2012, at 6.  To the extent that the Board adopted the reasoning of the PEB, this court will evaluate both decisions.

understands that the only requirement is that the Air Force actually use the VASRD, and substantial evidence in the record shows that the Air Force did apply the appropriate VASRD standards at all levels to evaluate plaintiff.  Beginning first with the findings of the PEB, the court notes that the PEB explicitly references the VASRD standards that plaintiff now complains have been ignored.  Having weighed the evidence, the PEB concluded: "Ms. Taylor's condition has stabilized, remains unfitting for military service and [the PEB] recommends Permanent Retirement with a compensable disability rating of 30% *per the schedule for rating disabilities in use by the Department of Veterans Affairs*."  Id. at 35 (emphasis added).

With this foundation for resolving the subsequent issues in this case, it is curious that plaintiff so vigorously argues that the Air Force failed to apply the proper standard.  Given this explicit reference, plaintiff would be required to show that the AFBCMR, through the medical consultant, actually departed from the path laid by the PEB.  Plaintiff fails to do so. After having found that plaintiff was entitled to at least the 30% rating assigned by the PEB, the medical consultant began his discussion on whether plaintiff met the standards for a 70% rating, "referenc[ing] the criteria for a 70% disability rating, *as shown in an extract from the Veterans Administration Schedule for Rating Disabilities*."  Id. at 113 (emphasis added). Contrary to plaintiff's arguments, the medical consultant's subsequent discussion of the differences between the military and DVA evaluation systems does not indicate that he applied a different rating scale.  In fact, his report demonstrates that he was aware that application of the same VASRD in the two systems could result in different ratings, not based on different ratings scales, but on the different temporal locus of the two evaluative systems. See id. at 113-14.  The medical consultant's discussion is particularly apt for explaining the result in this case, in which plaintiff has argued for raising her military-assigned disability rating to be more in line with the one provided her by the DVA.  That, however, is not the mandate of the Board's review, and plaintiff has failed to demonstrate that the Board, the medical consultant, or the PEB applied an incorrect rating standard when evaluating her appeal. 3/

The medical consultant's references to the DoDI were made expressly in the context of discussing past practices and the requirement of the 2008 NDAA to rate the Axis I MDD conditions independent of any the influence of Axis II BPD.  See id. at 113.  The medical consultant similarly discussed in detail the GAF used "on occasion" by the DVA in assigning disability ratings.  See id. at 113-14.  However, this discussion was in the nature of further support for his opinion that plaintiff's condition merited a 30% disability rating in that the medical consultant was examining plaintiff's civilian course of treatment while she was still

---

3/  The court disregards the reasoning supplied by defendant in its brief, which does state factors that are not considered by the VASRD scale.  See Def.'s Br. filed Dec. 2, 2011, at 25.  Defendant may not provide the rationale *post hoc* for the Board's decision.

on the TDRL.  Because it would not be reasonable to assume that a civilian mental health physician would be using the VASRD to evaluate his patients, plaintiff's GAF scores over the course of the year that she spent in civilian therapy were the only data available to the medical consultant, and it was appropriate for him to consider this information in connection with assessing whether plaintiff had met the threshold for a 70% disability rating under the VASRD.  See id. at 114 (concluding after discussing the GAF ratings: "Thus, the Consultant opines the applicant has not met the burden of proof that adequately justifies the maximal (permanent retirement with a 70% disability rating) requested change in the record she desires"); see also Petri v. United States, No. 11-155C, 2012 WL 1886445, at *10 (Fed. Cl. May 24, 2012) (discussing GAF scores in the context of a Physical Disability Board of Review proceeding—an alternative forum, not available to this former servicemember, created for situations in which the military and DVA have arrived at different ratings for a medical condition).  Its mere use does not unequivocally indicate that the medical consultant was basing his rating decision solely upon the GAF scale or that he was disregarding the VASRD.

The court reminds plaintiff that the medical consultant advised plaintiff that she could submit new medical evidence "that reflect [that] her condition was characterized as more severe" that might qualify her for a 70% rating, AR 114, and that the AFBCMR afforded plaintiff a thirty-day period to submit a response to the medical consultant's evaluation, but no response was forthcoming.  Id. at 6.  Affording this additional opportunity was entirely at the Board's option.  The military's determination of disability is presumptively as of the date of discharge, not the iterative process contemplated by the DVA.  Plaintiff explained during oral argument that such additional evidence was not available as of the date of the Board's final decision.  That being the case, the court must conclude that plaintiff had submitted to the Board the medical evidence then available.  Based on this evidence, the Board made its decision regarding plaintiff's condition as of the date of discharge, as was appropriate.  That the DVA subsequently concluded that plaintiff was due a higher rating or that plaintiff's condition subsequently had worsened is not material to this case.

Plaintiff also argues that the Board (and the SAFPC) failed to take appropriate account of the evidence regarding the severity of plaintiff's condition—including principally plaintiff's self-reported symptoms—thereby depriving her of a higher disability rating.  See Pl.'s Br. filed Jan. 3, 2012, at 7-9.  All of the applicant's medical evidence should be considered, including those symptoms reported to a health care professional.  See Vanieken-Ryals v. OPM, 508 F.3d 1034, 1041 (Fed. Cir. 2007); Def.'s Br. filed Apr. 24, 2012, at 21 ("We acknowledge that under the VASRD all medical evidence, to include self-reported symptoms or lay evidence must be considered.").  However, in reviewing the record in this case, the court finds no merit to plaintiff's argument.

Both the PEB and the medical consultant considered plaintiff's entire medical history in reaching their respective conclusions. See AR 35, 111-12. Plaintiff has not presented any evidence that plaintiff's self-reported symptoms were disregarded or discounted. The court's review of the administrative record confirmed that all relevant facts were considered. Furthermore, although plaintiff may believe that "'[t]he facts as stated by the Applicant clearly indicate a minimum of a 70% disability rating,'" Pl.'s Br. filed Feb. 7, 2012, at 3 (quoting AR 15), defendant aptly responds that plaintiff's "quest for judicial relief amounts to nothing more than a claimant who disagrees with an agency's decision," Def.'s Br. filed Jan. 27, 2012, at 6-7. It is not this court's duty to reweigh the evidence presented and make an independent judgment as to what disability rating plaintiff deserves; rather, this court is tasked to review the decision by the AFBCMR. See Wronke, 787 F.2d at 1576 (noting that when evidence may lead to multiple conclusions, Court of Federal Claims will not substitute its judgment for that of the corrections board). Plaintiff has not demonstrated that the Board's decision, based on the evidence before it, was arbitrary, capricious, or not based on substantial evidence. The court rules that the AFBCMR's decision is supported by substantial evidence and that its decision that plaintiff's symptoms did not rise to the level of severity meriting a 70% disability rating was neither arbitrary nor capricious.

Plaintiff has failed to carry her burden of showing that the Board's decision was contrary to law for failure to apply the appropriate VASRD standards or arbitrary, capricious, or not based on substantial evidence.

## III.  Whether plaintiff was denied counsel

Plaintiff has made passing reference in the complaint that she was denied counsel during the appellate proceedings among the various boards. See AR 20-21 (plaintiff's petition to the AFBCMR); Pl.'s Br. filed Jan. 3, 2012, at 2, 9. Plaintiff chose not to strenuously pursue this argument because she failed to press this claim or direct the court to any evidence of this alleged breach of regulations.  However, the evidence provided to the court in the administrative record does not appear to support this contention.  On January 29, 2009, the date of the formal PEB decision, Maj. Elliot Selle signed Block III of Air Force Form 1180 acknowledging that he "FULLY EXPLAINED TO THE MEMBER . . . THE LEGAL RESULTS OF THE FINDINGS AND RECOMMENDED DISPOSITION OF THE PEB AND OF THE APPLICABLE CASE PROCESSING PROCEDURES AND APPEAL RIGHTS." AR 36. On that same day, plaintiff indicated that "HAVING BEEN ADVISED OF THE LEGAL RESULTS OF THE FINDINGS AND RECOMMENDED DISPOSITION OF THE PEB . . . AND THE APPLICABLE CASE PROCESSING PROCEDURES AND APPEAL RIGHTS," she did not agree with the findings and disposition of the formal PEB and requested that her case be referred to the SAFPC for review. See id.

14

As defendant notes, the administrative record does not indicate whether plaintiff was represented by counsel before the SAFPC. See Def.'s Br. filed Apr. 24, 2012, at 25. The administrative record does not contain a form similar to that which was provided subsequent to the PEB hearing reflecting that plaintiff was represented or advised by counsel for the SAFPC review. Nor is there evidence that she waived her right to counsel or requested counsel but was not furnished one. In short, this court cannot conclude definitively that plaintiff was denied counsel that she otherwise should have received before the SAFPC. Thus, plaintiff has failed to meet her burden to demonstrate that there was a violation of plaintiff's rights under the applicable regulations.

Similarly, plaintiff was represented by counsel—the same counsel representing her before this court—before the AFBCMR, which completely overturned the decision of the SAFPC. See AR 8. Despite the fact that the AFBCMR overturned the SAFPC decision on other grounds—presumably the injustice was that the SAFPC decision was to separate plaintiff with only a 10% disability rating—and thus did not directly address whether plaintiff was represented by counsel before the SAFPC, the SAFPC decision effectively was nullified. Given that the AFBCMR determined not to follow the SAFPC decision, the court concludes that plaintiff has failed to demonstrate why, assuming that plaintiff was denied the representation to which she was otherwise entitled, this alleged error was prejudicial. The SAFPC decision no longer dictates the disposition of plaintiff's case, and plaintiff has produced no evidence, nor argued, how this alleged breach would have otherwise affected the AFBCMR's decision, which was rendered after argument by plaintiff's current counsel.

IV.  Whether the AFBCMR applied the benefit-of-the-doubt doctrine in plaintiff's favor

Plaintiff asserts that the Board failed to apply the appropriate evidentiary standard in evaluating her case. See Pl.'s Br. filed Jan. 3, 2012, at 8-9; Pl.'s Br. filed Feb. 7, 2012, at 6. The court understands this argument to be that plaintiff is challenging whether the AFBCMR granted her the presumptions under the "benefit-of-the-doubt" doctrine. As the Court of Federal Claims has recently articulated,

> The "benefit of the doubt" doctrine requires that the Secretary of the Air Force "consider all information and lay and medical evidence of record in a case," 38 U.S.C. § 5107(a) [2006], and "[w]hen there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant . . .'" id. § 5107(b).

Peterson v. United States, No. 10-664C, 2012 WL 1072304, at *12 (Fed. Cl. Mar. 29, 2012) (second alteration in original). Plaintiff contends that the Board failed to apply this doctrine

because, as between a 30% and a 70% rating, the Air Force assigned plaintiff only a 30% disability rating.  See Pl.'s Br. filed Jan. 3, 2012, at 8-9.

Plaintiff has mischaracterized how the benefit-of-the-doubt doctrine applies in this case.  According to 38 U.S.C. § 5107, the "doubt" is resolved in favor of the claimant "[w]hen there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter."  38 U.S.C. § 5107(b).  Plaintiff has argued that this equipoise exists between the 30% and 70% rating.  While this captures plaintiff's argument, the record actually reflects equipoise between a 10% rating, found by the second IPEB and the SAFPC, and a 30% rating, found by the formal PEB, the medical consultant, and the AFBCMR.  See Def.'s Br. filed Apr. 24, 2012, at 20.  The AFBCMR decision does not suggest that the Board assigned a 30% rating because it was faced with the draconian option of 10%; rather, the Board concluded that the medical consultant correctly assigned a rating of 30%.

Assuming that the record showed approximate balance between a 30% rating—indicating a moderate disability—and a 70% rating—indicating a severe disability—this would ignore the entirely separate 50% disability rating that exists in between what plaintiff claims she is due and what the Air Force has awarded her.  Plaintiff's "approximate balance" could occur only between adjacent rankings, and a genuine difference of opinion did arise within the Air Force as to whether plaintiff merited a 10% or a 30% disability rating.  The court cannot reweigh the evidence and determine *de novo* if the material evidence falls between two ratings.  The different reviewing authorities have disagreed over whether plaintiff is due a 10% or 30% rating.  This dispute is borne out by the record, and, given that this is the "approximate balance" point of this case, the medical consultant and the AFBCMR did adhere to the benefit-of-the-doubt doctrine in awarding plaintiff the higher of those two rankings.

V.  Whether plaintiff has presented sufficient evidence to overcome the presumption of regularity

Plaintiff contends that the Board overlooked her other arguments.  See Pl.'s Br. filed Jan. 3, 2012, at 2.  It is difficult for this court to reprise plaintiff's exact arguments because she alludes to them only in passing.  Plaintiff chose instead, wisely, to focus on the "[m]ost troubling" aspect—whether the AFBCMR issued a ratings decision using incorrect standards.  See Pl.'s Br. filed May 9, 2012, at 9.  Although plaintiff is correct that the AFBCMR's decision is silent on other arguments that plaintiff may have raised, see id. at 8-9, the Federal Circuit has declined to find error in this circumstance:

> We presume that actions taken by the Correction Board are valid, and the burden is upon the complainant to show otherwise.  We further presume that the

Correction Board performed its function according to the regulations and considered all of [plaintiff's] records. . . . In other words, an administrative board's or trial court's failure to mention specific evidence does not mean, as [plaintiff] contends that it failed to consider that evidence.

Melendez Camillo, 642 F.3d at 1045 (citations omitted). This "presumption of regularity" was not displaced by the 2008 NDAA. Moreover, a corrections board is required only to explain whether the complainant has demonstrated an error or injustice and, if so, how it should be remedied. See 32 C.F.R. § 865.4(h)(4) (2012). In doing so, it "must include a rational connection between the facts found and the choice made." Bowen v. Am. Hosp. Ass'n, 476 U.S. 610, 626 (1986) (citations omitted) (internal quotation marks omitted). The decision of the AFBCMR meets this standard.

Plaintiff appealed the SAFPC decision to the AFBCMR, and the Board found "the existence of error or injustice [significant enough] to warrant changing the applicant's [record]." AR 6. The Board provided its reasoning why the SAFPC decision should not stand. Ultimately, the Board agreed with plaintiff that the SAFPC had erred, and it sufficiently explained that decision. Plaintiff has not demonstrated that the Board otherwise erred or that its decision was arbitrary, capricious, not based on substantial evidence, or contrary to law and regulation.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion for judgment on the administrative record is granted, and plaintiff's cross-motion is denied. The Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED**.

No costs.

/s/ Christine O.C. Miller

_____

**Christine Odell Cook Miller**
Judge